NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 04a0125n.06
Filed: November 15, 2004

**No. 02-1812**

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| RANDY S. SPIRIDIGLIOZZI, | ) | |
| | ) | |
| Petitioner-Appellant, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| UNITED STATES OF AMERICA, | ) | COURT FOR THE EASTERN |
| | ) | DISTRICT OF MICHIGAN |
| Respondent-Appellee. | ) | |

**Before: CLAY and GILMAN, Circuit Judges; O'MALLEY, District Judge.***

**O'MALLEY, J.** Petitioner Randy Spiridigliozzi brings this appeal of the district court's decision denying his petition for a writ of habeas corpus, filed pursuant to 28 U.S.C. §2255, seeking to vacate, set aside, or correct his sentence. The petitioner asserts his guilty plea was defective. For the reasons stated below, the decision below is **AFFIRMED**.

### Background

Petitioner Spiridigliozzi was indicted in 1997 for conspiracy to distribute marijuana, in

---

* The Honorable Kathleen M. O'Malley, United States District Court Judge for the Northern District of Ohio, sitting by designation.

violation of 21 U.S.C. §§841, 846, and 860. Section 841 outlaws distribution and possession of a controlled substance; section 846 outlaws engaging in a conspiracy to distribute and possess a controlled substance; and section 860 doubles the penalties for violation of sections 841 and 846, if the violation occurs within 1,000 feet of a school.

This Court has earlier described the conspiracy and the characters central to this case as follows:

> An individual named Mario Saenz controlled a network of distributors who imported marijuana from Mexico. * * * [One of] Mr. Saenz's Michigan distributors (and a subsequent paramour of Mr. Spiridigliozzi), Cindy Crowl, generally supplied Toner and Spiridigliozzi with their marijuana.
> * * *
> Ms. Crowl became an important source of information for the government after she pleaded guilty to drug charges and tried to secure a reduced sentence by helping the government build its case against Spiridigliozzi and Toner. In this connection she gave the government meticulous records relating to the quantities of drugs handled by the two men.
> Another participant in the conspiracy was Timothy Finney. Mr. Finney took over from Ms. Crowl after she suspended operations in order to attend college. Mr. Finney operated out of a house situated near a local elementary school.

*United States v. McKinley*, 2001 WL 1110068 at \*1-2 (6th Cir. Sept. 13, 2001).

The last sentence in this excerpt from the *McKinley* opinion introduces the issue in this case. Spiridigliozzi insists his guilty plea was defective because the sentencing judge did not refer to 21 U.S.C. §860 at the plea hearing, and did not cite proximity to a school zone as an element of the offense of conviction. Spiridigliozzi argues that this failure contravened Fed. R. Crim. P. 11, such that his guilty plea was not knowingly and intelligently made.

A full background of the facts surrounding this issue starts with Spiridigliozzi's original indictment, which included the following allegations:

2

It was further a part of the conspiracy that . . . Randy S. Spiridigliozzi . . . and others would arrange for the storage of marijuana in various locations, including within 1,000 feet of the real property of an elementary school in Michigan.

It was further a part of the conspiracy that . . . Randy S. Spiridigliozzi . . . and others would, within 1,000 feet of the real property of an elementary school, obtain marijuana for distribution in Michigan.

Indictment at 2. Three superseding indictments contained identical language. After each of these four indictments were issued, Spiridigliozzi signed an acknowledgment that he: (1) read the indictment and understood its contents; and (2) understood that, if guilty, he could receive a sentence of "10 years to life, [a] $4,000,000 fine and five years supervised release." J.A. at 78.

On October 2, 1998, about three weeks after his initial indictment, Spiridigliozzi reached a Plea Agreement with the government. The Agreement provided that Spiridigliozzi's prison time would "not exceed [the] middle of the guideline range that the court finds to be applicable, subject to the mandatory minimum of 60 months." J.A. at 87. Attached to the Plea Agreement were sentencing worksheets, which referred to penalties of 5-40 years. Later that same day, the district court held a hearing to accept Spiridigliozzi's guilty plea. Notably, this colloquy occurred well before the Supreme Court had decided *Apprendi v. New Jersey*, 530 U.S. 466 (2000). As a general matter, the district court did a thorough job of ensuring there was a factual basis for Spiridigliozzi's guilty plea under then-applicable law. Not having any reason to do so, however, the district court did not ask Spiridigliozzi specifically about drug amounts, nor whether there was a factual basis to conclude he had arranged to store or obtain marijuana within 1,000 feet of a school. The district court did, however, explain repeatedly and in detail to Spiridigliozzi that: (1) he faced a likely range of incarceration of five years minimum to forty years maximum; and (2) he faced the possibility of

3

life in prison, if the ultimate drug amount calculation warranted it. Spiridigliozzi asked the district court questions about this prospect, and ultimately expressed satisfaction that he understood his sentencing position.

The Probation Department subsequently issued a pre-sentence investigation report ("PSR"), which contained the following conclusions and recommendations: (1) Spiridigliozzi was responsible for 232 kilos of marijuana, producing a base offense level of 26; (2) it was appropriate to add one level, because some of the marijuana was distributed within 1,000 feet of a school; (3) it was also appropriate to add two points for possession of a firearm, because Spiridigliozzi had threatened two co-conspirators (Finney and Crowl) with a sawed-off shotgun, believing they might be working with the government; (4) Spiridigliozzi should not receive any reduction for acceptance of responsibility, because his urine had tested positive for marijuana after entry of his plea; (5) Spiridigliozzi's total offense level, accordingly, was 29; (6) Spiridigliozzi had a criminal history category I; and (7) the applicable sentencing guideline range was 87-108 months, yielding a "midpoint" of 97.5 months.

Before sentencing, Spiridigliozzi filed a written objection to two aspects of the PSR. First, he objected to the addition of one point for distribution of marijuana near a school, stating: "The presentence report is devoid of any factual allegations indicating that defendant provided marijuana to Tim Finney for distribution. A nexus between Mr. Finney and defendant is required as it was Mr. Finney's home that is alleged to be within 1000 feet of a protected zone (i.e. school)." J.A. at 439. The Probation Department responded to this objection in writing: "According to Cindy Crowl, the defendant received one pound of marijuana from Tim Finney while she and the defendant were at Mr. Finney's house the day she was arrested." *Id.* Second, Spiridigliozzi denied having possessed

4

a firearm in connection with the drug offense, and challenged the propriety of the two additional points for having displayed a sawed-off shotgun. The Probation Department responded to this objection in writing, as well. At the sentencing hearing, Spiridigliozzi orally raised two additional issues: Spiridigliozzi disagreed with the conclusion in the PSR that he was not entitled to a downward adjustment to his offense level for acceptance of responsibility, and he also asserted he was entitled to a downward adjustment for minimal participation in the conspiracy.

At the sentencing hearing, the district court first asked Spiridigliozzi about the two written objections. With regard to the school zone issue, the following discussion occurred:

| Defense Counsel: | I would first of all indicate that with regards to an objection I had filed with regard to a lack of a nexus between this Defendant and the school zone, which resulted in a one level increase. My client has acknowledged having received one pound of marijuana from that home at or near the end of this conspiracy. |
|---|---|
| The Court: | That's the Finney home, I think? |
| Defense Counsel: | It is, Your Honor. |
| The Court: | Which was across from a school? |
| Defense Counsel: | A protected zone. |
| The Court: | All right. |
| Defense Counsel: | And I would simply indicate to the Court that it's simply my intention to argue how that may affect sentencing within the range. |
| The Court: | But the points that were suggested to be assessed are correctly assessed? |
| Defense Counsel: | Correct. |

> The Court:          So any objection is withdrawn in that regard?
>
> Defense Counsel:    Correct.

J.A. at 264. Spiridigliozzi was present during this discussion. "[W]hen a stipulation to a crucial fact is entered into the record in open court in the presence of the defendant, and is agreed to by defendant's acknowledged counsel, the trial court may reasonably assume that the defendant is aware of the content of the stipulation and agreed to it through his or her attorney." *United States v. Ferreboeuf*, 632 F.2d 832, 836 (9th Cir. 1980).

The district court then turned to the question of whether it was appropriate to impose two additional points because Spiridigliozzi had used a sawed-off shotgun. To support its position, the government called Cindy Crowl, Spiridigliozzi's ex-girlfriend. Crowl testified that she had twice seen Spiridigliozzi with a firearm: once, he "held a sawed-off shotgun in her presence while inquiring whether she was 'snitching,'" and another time, "believing Mr. Finney to have given information to the authorities, [he] set off with his shotgun to find Finney. (The search proved unsuccessful.)" *McKinley*, 2001 WL 1110068 at *6. In response, Spiridigliozzi took the witness stand, seeking to contradict Crowl's testimony on the shotgun issue. During Spiridigliozzi's own testimony, however, he made it clear there was ample reason for his earlier withdrawal of the sentencing objection regarding the school zone enhancement:

> Q.    And the marijuana, the pound of marijuana you received from Cindy on the day of arrest, you did receive that within Tim Finney's house, correct?
>
> A.    Actually, Cindy carried it out to the car and I got it from her car at my address.
>
> Q.    The car – it was brought to the car? You were in the car at Tim Finney's house?

6

A.      Yes . . . .

J.A. at 319. In other words, Spiridigliozzi testified under oath that he and Crowl drove together to Finney's house, he waited in the car while Crowl picked up a pound of marijuana, they then drove together to Spiridigliozzi's house, and Spiridigliozzi took physical possession of the pound of marijuana.[1]

Following the presentation of evidence at the sentencing hearing, the district court concluded that none of Spiridigliozzi's sentencing objections were well-taken. Although Spiridigliozzi had withdrawn his objection to the addition of one point for proximity to a school zone, his counsel did suggest that the district court should use its discretion to mitigate the effect this additional point had on the ultimate sentence. Specifically, counsel argued:

> With regards to the one point that he also received for having distributed marijuana within a school zone, which equates to about an additional year for this fellow, I would ask that you consider that his receipt of one pound of marijuana appeared to be quite accidental on the final days of this conspiracy and that, in terms of the evils the statute was designed to prohibit and punish people for, this is a rather odd way to include Mr. Spiridigliozzi in that.

J.A. at 348. The district court disagreed:

> I can easily imagine some school zone assessment enhancements being imposed in questionable circumstances. A thousand foot zone extends to nearly a quarter of a mile and I think that there may be some very reasonable questions raised about notice. * * * This is not one of those cases. I mean, this is blatant. If ever there was a case for a school zone enhancement to be applied, this is the one. * * * [B]eing across the street in full view, there's just no doubt that any sensible person would understand that he's within the ambit of a school with all that implies, the coming

---

[1] Ultimately, the district court (and this Court, on direct appeal) found that Spiridigliozzi had, in fact, used a firearm in connection with the drug offense. See *McKinley*, 2001 WL 1110068 at *6 (affirming on direct appeal Spiridigliozzi's sentencing enhancement under U.S.S.G. §2D1.1(b)(1)).

7

and going of children and so forth.

J.A. at 351. Again, this colloquy occurred in Spiridigliozzi's presence. The district court then accepted all of the recommendations and conclusions contained in the PSR, yielding a sentencing guideline range of 87-108 months.

The district court chose to impose a term of incarceration of "90 months, higher than the minimum of the guideline range but somewhat less than the mid-point." J.A. at 352. Of course, this sentence was far below what Spiridigliozzi had been told could be his maximum sentence of life in prison, and also far below what he had been told was his likely maximum sentence (given the expected drug quantity involved) of 40 years.

Spiridigliozzi filed a direct appeal, "contend[ing] that he should have been given an opportunity to withdraw his guilty plea once the acceptance-of-responsibility credit was withdrawn," and also arguing "that the court erred in finding that he intimidated Ms. Crowl with a firearm." *McKinley*, 2001 WL 1110068 at *5. This Court found Spiridigliozzi's arguments without merit. Spiridigliozzi then filed a timely motion for relief under 28 U.S.C. §2255, raising three grounds for relief. The district court denied the petition, and also denied a certificate of appealability as to all three grounds. Spiridigliozzi applied to this court for a certificate of appealability, and we granted the application in part. The sole issue we allowed Spiridigliozzi to pursue in this appeal "whether [his] guilty plea was defective because the district court judge neither referred to 21 U.S.C. §860 at the plea hearing, nor cited proximity to a school zone as an element of the offense of conviction."

**Analysis**

8

Rule 11(b)(3) of the Federal Rules of Criminal Procedure is titled "Determining the Factual Basis for a Plea," and instructs district courts that, "[b]efore entering judgment on a guilty plea, the court must determine that there is a factual basis for the plea."[2] "The requirement that a sentencing court must satisfy itself that a sufficient factual basis supports the guilty plea is not a requirement of the Constitution, but rather a requirement created by rules and statutes." *United States v. Tunning*, 69 F.3d 107, 111 (6th Cir. 1995). "The purpose of this requirement is to ensure the accuracy of the plea through some evidence that a defendant actually committed the offense." *Id.*. (quoting *United States v. Keiswetter*, 860 F.2d 992, 995 (10th Cir. 1988), *modified as to remedy*, 866 F.2d 1301 (10th Cir. 1989) (en banc)). *See United States v. Maher*, 108 F.3d 1513, 1524 (2d Cir. 1997) (the court must "assure itself simply that the conduct to which the defendant admits is in fact an offense under the statutory provision under which he is pleading guilty"). "This step – matching the facts to the legal elements of the charged crime – is designed to 'protect a defendant who is in the position of pleading voluntarily with an understanding of the nature of the charge but without realizing that his conduct does not actually fall within the charge.'" *United States v. Smith*, 160 F.3d 117, 121 (2d Cir. 1998) (quoting *McCarthy v. United States*, 394 U.S. 459, 467 (1969), and Fed. R. Crim. P. 11 Advisory Committee notes)).

---

[2] In their briefs, the parties refer incorrectly to Rule 11(f), and not Rule 11(b)(3). Rule 11 was amended most recently on December 1, 2002, at which time the subparts of the rule were "reorganized as part of the general restyling of the Criminal Rules." Advisory Committee Notes, 2002 Amendments. Pursuant to this reorganization, Rule 11(f) was recast as Rule 11(b)(3), while Rule 11(c) was recast as Rule 11(b)(1). Before the 2002 amendment, Rule 11(f) stated: "Notwithstanding the acceptance of a plea of guilty, the court should not enter a judgment upon such plea without making such inquiry as shall satisfy it that there is a factual basis for the plea." Case law discussing Rule 11 prior to its 2002 amendment remains apposite: the 2002 changes were generally "intended to be stylistic only." Advisory Committee Notes to 2002 Amendments.

We have noted that Criminal Rule 11(b)(3) (formerly Rule 11(f)) "does not provide any guidance concerning the steps a district court should take to ensure that a factual basis exists." *United States v. Baez*, 87 F.3d 805, 809 (6th Cir.), *cert. denied*, 519 U.S. 973 (1996). Accordingly, this Court has provided its own guidance to district courts. In *Tunning*, we explained:

> The ideal means to establish the factual basis for a guilty plea is for the district court to ask the defendant to state, in the defendant's own words, what the defendant did that he believes constitutes the crime to which he is pleading guilty. So long as the district court ensures that the defendant's statement includes conduct – and mental state if necessary – that satisfy every element of the offense, there should be no question concerning the sufficiency of the factual basis for the guilty plea. This "ideal" method is by no means the only method, however. "We recognize that the district court may determine the existence of the Rule 11(f) factual basis from a number of sources, including a statement on the record from the government prosecutors as well as a statement from the defendant." [*United States v. Goldberg*, 862 F.2d 101, 105 (6th Cir. 1988).] And, of course, it is possible that witnesses may be called to state the factual basis with the defendant providing confirmation.

*Tunning*, 69 F.3d at 112. *See also United States v. Williams*, 176 F.3d 301, 313-14 (6th Cir. 1999) (reviewing cases where a sufficient factual basis for a guilty plea was found, despite extremely little discussion with the defendant).

Importantly, the focus of Rule 11(b)(3) is different from that of Rule 11(b)(1) (formerly Rule 11(c)(1)).[3] Rule 11(b)(1) "focuses on the defendant and his understanding of the proceedings and his rights." *United States v. Smith*, 160 F.3d 117, 121 n.1 (2d Cir. 1998) (emphasis in original). Rule 11(b)(1) helps ensure that the defendant's choice to plead guilty or nolo contendere is knowing, intelligent, and voluntary, by requiring the district court to "inform the defendant of, and determine that the defendant understands," a long list of critical subjects, such as his right to a trial by jury.

---

[3] *See* footnote 2, *infra.*

10

Fed. R. Crim. P. 11(b)(1). One of the critical subjects the district court must ensure the defendant understands is "the nature of each charge to which the defendant is pleading." Rule 11(b)(1)(G). This is because "a guilty plea is an admission of all the elements of a formal criminal charge." *McCarthy*, 394 U.S. at 466.

In contrast, Rule 11(b)(3) "focuses on the <u>judge</u> and his or her assessment that the facts of the case fit the elements of the crime." *Smith*, 160 F.3d at 121 n.1 (emphasis in original). The judge "may look to answers provided by counsel for the defense and government, the presentence report, 'or . . . whatever means is appropriate in a specific case' – so long as the factual basis is put on the record." <u>Id.</u> at 121 (quoting *Maher*, 108 F.3d at 1524).

This distinction between Rules 11(b)(3) and 11(b)(1)(G) is important because the scope of what this Court may consider, when reviewing whether the district court complied with its obligations, is not the same for each rule. Certainly, "Rule 11(b)(1)(G)'s requirement that a defendant understand the essential elements of the crime is integrally related to Rule 11(b)(3)'s requirement that the district court determine that the plea has a factual basis." *United States v. Valdez*, 362 F.3d 903, 909 (6th Cir. 2004). But, when assessing whether a district court determined correctly that there was a factual basis for the plea, pursuant to Rule 11(b)(3), this Court may examine the entire record, including proceedings that occurred <u>after</u> the plea colloquy. *See McCarthy*, 394 U.S. at 462 ("the colloquy <u>at the sentencing hearing</u> demonstrated that the judge had satisfied himself by an examination of the presentence report that the plea had a factual basis") (emphasis added); *Smith*, 160 F.3d at 121 (examining the factual basis for the plea as discussed in

11

"the presence report").[4] When assessing whether a district court determined correctly that the defendant understood the elements of the crimes with which he is charged, pursuant to Rule 11(b)(1)(G), however, this Court is limited to examination of the plea colloquy and what came before. This limitation is imposed because a defendant's guilty plea cannot be knowing and intelligent if one or more of the elements of his alleged crime are made clear to him only <u>after</u> he enters his plea.

Turning to the ultimate question in this case, we first conclude easily that the district court did not violate Rule 11(b)(3), which requires a district court to satisfy itself that there is a sufficient factual basis to support the guilty plea. It is true that, <u>during the plea colloquy itself</u>, the district court did not elicit from Spiridigliozzi or the government the factual basis to conclude that Spiridigliozzi had arranged to store or obtain marijuana within 1,000 feet of a school. But the district court certainly obtained this factual basis from the presence report, where the connection between Spiridigliozzi and Finney's house was explained. And even the slightest shred of doubt was removed during the sentencing hearing, when: (1) Spiridigliozzi withdrew his objection to the addition of one point for distribution of marijuana near a school, conceding the point was "correctly assessed;" and (2) Spiridigliozzi testified under oath to having waited in his car at Finney's home, across the street from a school, while Crowl obtained for him a pound of marijuana from Finney.

Conceivably, this conclusion could end the Court's analysis. Spiridigliozzi refers in his

---

[4] Indeed, "[t]he district court's obligations under [Rule 11(b)(3)] continue until it has entered judgment. If it decides there was no factual basis for a guilty plea <u>after accepting it</u>, the court should vacate the plea and enter a plea of not guilty on behalf of the defendant." *Smith*, 160 F.3d at 121 (emphasis added).

12

appellate brief only to Rule 11(f) – the predecessor to Rule 11(b)(3) – and not to Rule 11(b)(1) (or

its predecessor, Rule 11(c)(1)). To the extent Spiridigliozzi's appeal challenges only the conclusion

that the district court did not obtain a sufficient factual basis to support the guilty plea, his appeal

clearly fails. Because Rules 11(b)(3) and 11(b)(1) are "integrally related," however, we also

examine the separate question of whether Spiridigliozzi was fairly apprised of the elements of the

crime with which he was charged, before he pleaded guilty. *Valdez*, 362 F.3d at 909.

As an initial matter, we note that neither the United States Supreme Court nor this Circuit

has ever made clear whether 21 U.S.C. §860 (discussing proximity to a school) describes a

<u>sentencing factor</u> that enhances penalties for violating 21 U.S.C. §§841 and 846, or instead describes

a separate offense. The government insists that §860 is merely a sentencing factor. Under this

approach, the government argues, Spiridigliozzi's position is simply not cognizable. *See Grant v.*

*United States*, 72 F.3d 503 (6th Cir. 1996), *cert. denied*, 517 U.S. 1200 (1996) (holding a §2255

petitioner could not obtain collateral relief on a claim that the trial court erroneously applied the

Sentencing Guidelines when it failed to make an explicit factual finding as to the scope of criminal

activity). Without actually deciding this issue, we will assume that §860 does describe a separate

offense, and not merely a sentencing enhancement, as several of our sister appellate courts have

held. *See e.g., United States v. Flaharty*, 295 F.3d 182, 193 (2d Cir. 2002), *cert. denied*, 537 U.S.

936 (2002) ("Section 860 describes an offense whose pertinent elements are (a) the performance of

certain acts that are prohibited by 21 U.S.C. §841(a)(1), and (b) the proximity of those acts to a

school"); *United States v. Gonzalez-Rodriguez*, 239 F.3d 948, 952 (8th Cir. 2001) ("[C]ongress

intended that §841 and §860 be separate offenses"); *United States v. Kakatin*, 214 F.3d 1049, (9th

13

Cir. 2000), *cert. denied*, 531 U.S. 911 (2000) ("this circuit (and several other circuits) already have held that *Congress intended* that §841 and §860 be separate substantive offenses") (emphasis in original; reciting cases).[5] Even with this assumption, however, we conclude Spiridigliozzi has not shown he is entitled to any relief for violation of Rule 11(b)(1)(G).

The nub of Spiridigliozzi's argument is that he did not know the full nature of the conspiracy charge against him when he pleaded guilty because, during the plea colloquy itself, the district court never explicitly informed him of an essential element of §860 – the proximity of his acts to a school. In the particular circumstances of this case, however, Spiridigliozzi's argument is unavailing, because it is clear that: (1) he knew about this element of §860 from other sources before he pleaded guilty; and (2) he admitted to the underlying facts at sentencing, making it clear that his substantial rights were not affected.

As noted above, Spiridigliozzi received indictment documents four separate times (the original and three superseding), charging him with violation of §860. Each indictment alleged that he "arrange[d] for the storage of marijuana in various locations, including within 1,000 feet of the real property of an elementary school in Michigan," and also alleged that he "would, within 1,000 feet of the real property of an elementary school, obtain marihuana for distribution in Michigan." After receiving each of these four indictments, Spiridigliozzi signed an acknowledgment that he had read the document and understood its contents. At the plea colloquy, Spiridigliozzi acknowledged several times that he had discussed his case with his attorney. J.A. at 368-69, 391-92.

---

[5] Given the trend of recent Supreme Court case law, we believe this is likely the correct assumption.

14

This Court has repeatedly noted that, "[w]here the crime is easily understood, . . . a reading of the indictment, or even a summary of the charges in the indictment and an admission by the defendant, is sufficient to establish a factual basis under Rule 11." *United States v. Edgecomb*, 910 F.2d 1309, 1313 (6th Cir.1990); (quoting *United States v. Van Buren*, 804 F.2d 888, 892 (6th Cir.1986)). And, we have ruled that "conspiracy to possess cocaine with intent to distribute is a simple crime." *United States v. Ferguson*, 1997 WL 764471 at *3-4 (6th Cir. Dec. 3, 1997) (citing *Edgecomb*, 910 F.2d at 1313). We harbor no doubt that, at the time the district court accepted his plea, Spiridigliozzi fully understood he was charged with "arrang[ing] for the storage of marijuana" and "obtaining marijuana for distribution" "within 1,000 feet of . . . an elementary school." Spiridigliozzi acknowledged four different times that he had read and understood these allegations, which were couched in simple, easily-understood language.

Further, there can be no doubt that Spiridigliozzi's substantial rights were not affected by the district court's omission. As noted above, Spiridigliozzi's counsel told the district court at sentencing that Spiridigliozzi had "acknowledged having received one pound of marijuana from" "the Finney home," which was "across from a school." J.A. at 264. Spiridigliozzi then testified under oath and admitted to driving with Crowl to Finney's house to pick up a pound of marijuana. There is simply no factual basis whatsoever to argue that, when Spiridigliozzi pleaded guilty, he did not know the full nature of the crimes of which he was accused, or that he did not actually commit those crimes.

Over 30 years ago, this Court noted that, as regards the procedure followed by district courts during Rule 11 criminal hearings, "[m]atters of reality, and not mere ritual, should be controlling."

15

*Kennedy v. United States*, 397 F.2d 16, 17 (6th Cir. 1968); *see McCarthy*, 394 U.S. at 467 n.20 (quoting this language with approval). The facts demonstrate the "reality" in this case is that Spiridigliozzi "has not demonstrated the existence of a fundamental defect which inherently results in a complete miscarriage of justice, or an omission inconsistent with the rudimentary demands of fair procedure." *United States v. Todaro*, 982 F.2d 1025, 1030 (6th Cir. 1993) (citing *Hill v. United States*, 368 U.S. 424, 428 (1962)) (denying relief to a §2255 petitioner who claimed that the district court failed to comply with Rule 11). Spiridigliozzi has not established plain error, as he has not shown that any error by the district court affected his "substantial rights." Fed. R. Crim. P. 52(b)[6] *United States v. Thomas*, 11 F.3d 620, 630 (6th Cir. 1993).

Finally, we note that the Supreme Court decided *Blakely v. Washington*, 124 S. Ct. 2531 (2004), after Spiridigliozzi filed this appeal. Nonetheless, the Court has reviewed this appeal with *Blakely* in mind, and concludes that *Blakely* does not provide any ground for relief. As noted above, Spiridigliozzi *admitted* under oath at sentencing that he went with Crowl to Finney's house, which was across the street from an elementary school, to pick up a pound of marijuana. *See United States v. Koch*, 383 F.3d 436, 440-41 (6th Cir. Aug. 26, 2004) ("the 'statutory maximum' for *Apprendi* purposes is the maximum sentence a judge may impose solely on the basis of the facts reflected in the jury verdict or *admitted by the defendant*") (quoting *Blakely*, 124 S. Ct. at 2537) (emphasis added); *see also McKinley*, 2001 WL 1110068 at *5 (finding meritless the *Apprendi* claim on direct appeal of Spiridigliozzi's co-defendant, Toner, because "the maximum penalty for the . . . offense,

---

[6] Spiridigliozzi did not raise any contemporaneous objection to the plea proceedings, so any alleged error must be reviewed under a plain error standard. *United States v. Vonn*, 535 U.S. 55, 59 (2002).

under 21 U.S.C. §860, is 10 years," which exceeded the sentence Toner (and Spiridigliozzi) actually received).  In addition, like the Supreme Court's decision in *Apprendi,* it is unlikely *Blakely* would apply retroactively to matters addressed via 28 U.S.C. §2255.  *See In re Clemmons*, 259 F.3d 489, 492 (6th Cir. 2001) ("[w]hile this court has applied *Apprendi* to cases on direct appeal, we have not applied its new rule retroactively to cases on collateral review"); *In re Dean*, 375 F.3d 1287, 1290 (11th Cir. 2004) ("[the §2255 petitioner] cannot show that the Supreme Court has made [the *Blakely*] decision retroactive to cases already final on direct review").

Accordingly, the district court's decision denying Spiridigliozzi relief under §2255 is **AFFIRMED**.